Good morning. May it please the court, my name is Salinas Ruth and I represent the appellants. It'd help if you keep your voice up a little. I represent the appellants Anthony J. Delevin and Shannon Leigh Plyler, Daniel Steinhardt and Stacey Luther Mitzka. I respectfully request approximately four minutes for rebuttal and to address the issue of the appeal of the attorney's fees. Okay now watch your time, I'll try to help you. You see the clock there? Thank you. Thank you for the opportunity to do this oral argument. This appeal questions the district courts dismissal of a complaint for an intentional infliction of emotional distress caused by receipt of a private threatening email from Ted Holteen, the Arts and Entertainment Director of the Durango Herald, to the appellants and in this situation the district court failed to analyze the totality of the circumstances surrounding that email. Specifically, instead, well I think one of the things in your briefing you contend that Holteen was in a position of power and that this position affects the argument in the district court and if you didn't, why isn't that argument waived here and where in the record can I find that you made that argument? The argument, I was not the attorney at that time, Your Honor, but the argument was not made in the lower court. I don't see any basis for us to consider it at this point. Okay. I mean it's not, I realize this is always a hazard of the appellate counsel is you have to take the record as you find it. Yes. There is an issue regarding the totality of the surrounding circumstances of an email that when a plaintiff alleges outrageous behavior as a matter of law, the trial court must analyze the totality of the defendant's conduct and that's in a case, Han-Yi Lee versus the Colorado Times and that's a 2009 Colorado appeals case. So it's also been that particular rule of law has been, is in the Colorado jury instructions and Zolnice versus Thoroughbred Dotson, a 1982 case out of Colorado also states that. Although that Colorado case that you first mentioned, the Han-Li case? Yes. There were questions of falsity, I think, and defamation and the communication was distributed. We have quite a different, as you characterized it here, it's a private email. So I'm having some trouble understanding how that first Colorado case really has applicability here. Yeah. There's other cases, Green versus Quest Services and the Zolnice case. It's been, I think, a fairly settled rule that the totality of defendant's conduct needs to be reviewed. I have the Colorado jury instructions from 2015 and the, in those resources and authorities for that particular rule. All right. So what specifically are you saying is the totality here? Because I noticed one thing in your brief, you state that Holtine later informed Delavan that other specified person shared negative comments about Delavan and thus shared Holtine's desire to see them harmed and dead, or is that just your interpretation of what Delavan meant when he said others shared his negative comments? I would say that others shared his negative comments is what was said. That others had spoken. Well, that's what was said, but is your interpretation that that means that, did he actually say others wanted him harmed and dead? No. So it's your interpretation of what others shared the negative comments? Yes. Okay. Would you elaborate on one thing? Yes. There's some suggestion, again, it's the record below, there was no request to amend and no proffer of what the amendment would say. Yes. I think in your brief you used the term that you could amplify existing allegations. If the only real evidence is the e-mail, what would be the amplification that would be offered up? Well, I think it would be circumstances surrounding that e-mail, because in making this decision... Like? I'm sorry. Like what? I think I had some information in that, for example, excuse me just a moment. I mean, what you need to do is give us a proffer of what the e-mail said that would be different than what it said last time. Well, some of the facts I don't think were introduced, and you're asking me for the facts that weren't introduced. Is that correct? Well, I'm asking, yes. We don't have it in the trial court. We now say, well, maybe it could be amplified, and judges in general don't like to dismiss things without prejudice, and we don't necessarily like to see things have any foundation of what facts would change the calculus. I don't see how there was any error here. I think... I know that you have... that you're talking about the amendment of the complaint right now. Correct. And we've the totality of the circumstances as though that's not an issue, but I'll go back. No, we're not... I don't want you to think that we don't think it's an issue. It's just that we have questions on a variety of subjects without putting a priority on one or the other. Thank you, Your Honor. In terms of amending the complaint, I think that at the time the... there was no response that came from the actual newspaper, and they were apprised of and aware of this email that had come in, and the newspaper did not respond at all. I mean, that seems kind of odd to me because it's sort of like saying we wrote you an email and we'd like some publicity and we didn't hear from you. How can that be a basis for a legal complaint? I'm sorry, Your Honor. Well, isn't that the email or isn't that the inquiry that didn't get responded to? There was a... the newspaper was contacted about the content of the email on that date, and the newspaper failed to respond at all. Is that a crime or some kind of tort? Well, it seems to me, Your Honor, that... Might be bad manners, but maybe there's a legal basis to... I guess the idea is looking at the facts surrounding the case, people come to an area they're not familiar with on the date, and they've had a relationship with the newspaper because they've been placing ads in it, they've been corresponding and that kind of thing, and on the day of the actual concert, everybody's there, everybody's prepared, and then this particular email comes in. And so when it comes in, the police are notified and various things happen that you know of that are in the record. And so when the newspaper is also asked about this, there's no response. And so I think that this is another thing leading to them being complicit somehow, and not knowing exactly why there would be no response and what was that about, what was that leading to? I think the outrageousness here relates to the fact that it was a single email, but the total circumstances surrounding it had a relationship with the parties, had the... Actually, sort of a dishonest response to a request that had been made on June 9th to go ahead and do an editorial and put something in the calendar, to have that response come in on the morning of something that's going to happen with a lot of people away from their homes and so on, and in the wake of all the violence and Gabby Gifford's thing that happened that was very close, and I think that for the individuals, they were... And this was not also... Well, they went ahead with the concert, right? What? The concert or the event took place. Yes. Okay. And nobody at the event got this email, correct, that we know of? Nobody at the event got it, but because... And not too many people showed up for the event. Well, and that's an interesting thing because... Well, yes or no? No. And are you somehow attributing that to the newspaper? I'm attributing that to the fact that there was police on this, police notified that day, and it's a small community, and the courts were also notified that day. Do you have any evidence in the record on that argument in terms of people saying they didn't show up because of X or... No, Your Honor. Okay. Not at this point. You may wanna save your remaining time. Yeah, I think I'll save my remaining time. All right. Thank you. Good morning, and may it please the court. My name is Stephen Zansberg, and I represent the defendants and the appellees, Ted Holtein, Durango Herald, Inc., and Ballantyne Communications. The district court did not err in entering either of the two orders that are appealed from today. I'll address the attorney's fees since counsel has reserved time. But first, I'll address the merits decision, which granted the defendants' motion to dismiss for failure to state a claim under Rule 12b6 of the single appealed state court tort action for intentional infliction of emotional distress through extreme and outrageous conduct. And the only issue is whether the district court erred in finding, as a matter of law, that the single email communication at issue that gave rise to the claim does not constitute extreme and outrageous conduct. That presents a jury question. The district court appropriately found that, consistent with Colorado case law and specifically relying upon illustration four of the restatement of torts second, that the single email is distasteful as its content. That's a little more than distasteful here. It is, but it is also a single event. As your honors have already indicated, the argument concerning a power relationship, even if it were valid, which it's not, was not raised below. It's not properly before the court. I can address our brief, actually, I think does an adequate job of explaining why on the merits there's no basis to that argument. But it was not raised below. And so looking at Colorado case law in the absence of a special relationship or fiduciary relationship of some sort or a power relationship between the parties, it is not impossible for a single act to constitute an extreme and outrageous conduct. Is it your position that a single communication can never serve as a basis for an IED claim? No. Okay. So what sorts of things would someone have to say in their statements to be sufficiently outrageous? Well, let me... I mean, at minimum, this was a very rude and unprofessional response. No question about it, your honor. Let me see if I can answer the question two ways. First of all, the tort is for extreme and outrageous conduct. And so unquestionably, a single act of conduct, threatening behavior, physical attack, assault, conduct, a single action by a defendant can give rise to an extreme and outrageous conduct claim. There's no conduct here other than speech. And in fact, the restatement of tort's third adopted in 2012... Well, if the speech, though, is a... I mean, some speech can be a threat. Exactly. Speech can be a threat. And speech... So if the email contained a threat, would it be your position then that that would be outrageous? It could. It absolutely could. An unprotected... Yes. Absolutely. A single... I know where your kids go to school. I know where you go to work. I know what time you get up. I know when you have coffee. And I'm going to be there. Exactly. A very concrete... Is that a threat? ...true threat... Can I be threatened by that, if someone says that to me? ...that I intend to attack you and your children... Yes. ...and watch out because I'm going to be there and you should be dead. Yes. That could be... That could constitute a threat. This circuit's case law that we argued in our First Amendment brief for how this circuit in particular defines a true threat, the U.S. v. Baghdadarian case, which is cited at pages 32 and 33 of our brief, has facts very similar to the ones Your Honor just recited with respect to President Obama and what would befall him. Right. And of course, a presidential threat has a little bit different, based on statutes and case law, has a little bit different vitality. But here it's like, you'll be lucky to leave Durango without being in handcuffs or slaughtered by an angry mob. And we're not idiots here, like you suckers you rope in down in Arizona. Mm-hmm. Yes. And with all due respect, Your Honor, the true threats doctrine from the U.S. Supreme Court applies to all speech on matters of public concern, whether it's concerning a President of the United States or a prison guard in the United States... So are we just assuming that this person that made this threat because this person's a pencil pusher, you know, sitting behind a desk, that we don't have to be worried about him? Well, again, I respectfully disagree with that. There's some pencil pushers that have done some pretty violent things. I agree. But we look at the context of the speech and the speech itself, and under this Court's precedence, I would respectfully suggest, Your Honors, that it cannot be deemed a threat. And if it is not a threat, as we argued below, it's protected by the First Amendment and Snyder v. Phelps, a case involving intentional infliction of emotional distress claim under state tort law for the Westboro Baptist Church, confrontation at the funeral of the fallen soldier, including you're going to hell, and other highly offensive and inappropriate communications deemed to be on a matter of public concern. And the U.S. Supreme Court said the First Amendment bars the imposition of any civil tort liability for the very tort alleged here, intentional infliction of emotional distress for speech that is protected by the First Amendment. Now, the reason we don't, why the district court didn't reach that is because the court looked at, as Your Honor pointed out, in Hanyi Lee, the court of appeals, the two judges who found that that newspaper article concerning Ms. Lee could constitute an intentional infliction of emotional distress claim, was because it was false, and it was knowingly or recklessly false, falling into the category of unprotected speech of libel, as defined by New York Times v. Sullivan. And the court expressly distinguished the Gordon v. Boyles case from the Colorado Supreme Court, where also a defamation, intentional infliction case, where there was a tag-along claim of I.I.E.D. for a defamation, even though one of the allegations that Officer Boyles ... Well, he clearly went further, though, than I hate your music here. You know, he said for, like, I mean, he seems to, if I had my way, I'd all be in prison or worse. I hope you play to an empty venue tonight to exemplify how irrelevant you are, so that you're doing well there. It's disgusting the way you people prey on the unsuspecting and trusting, and it's only a matter of time before Tony Delavan, not Gabriel, not a prophet, not a seer, Tony Delavan gets what's coming to him, so what's coming. And any of you that help him perpetuate his crimes are just as guilty. Oh, yeah. And you know Talent Hacks produce the singularly worst music I've ever heard in my life. You'll be lucky to leave Durango without being in handcuffs or slaughtered by an angry mob. We're not idiots around here like the suckers you rope in down in Arizona. If there was a hell, I'd wish you would burn there for eternity, but since there is no place exists, I can only hope that you suffer horribly painful deaths. Shame on you. Yes, and I would refer, Your Honor, to pages 32 and 33 of our brief on the merits where we quote a case, Griffin v. Lockett, where the prisoner sent to the prison staff an email saying, I hope you bastards die a violent death. And the court there found that that was not a true threat. And we have a variety of cases cited in our briefs. Okay. You have all one, but I think her argument was it's the totality of the circumstances. You have one here, one there. You know, I mean, some of it clearly goes to, I hate your music and I take this, you know. Let me suggest this, that if the court were to find that the totality of the circumstances, the content of the speech and the interaction between the defendant and the plaintiffs that the district court clearly acknowledged in its order, it was aware and cited to the ads being placed by the group prior to the event, that it was CC, the email was CC to Brian Liggett, the station manager. All of that was acknowledged by the district court in its finding. If this court were to find that that, in sitting de novo review, that that constitutes a cognizable claim, a jury question. Okay. I read you the whole email. So assuming that we agree with you and I'm just, it's a hypothetical, add one more sentence that would take this from free speech to a threat. Add one more sentence to all of that to me that would, tells me that it would take it to a threat. And if you guys show up, I intend to blow up the auditorium. And if you continue to perform. Then wouldn't you argue, oh, that's just rhetorical? Well, I don't know, but I'm not sure that that would be enough. I'm not sure. But it clearly has to be more than what was said, because what was said is the hope that they die a miserable death. And under this court's precedence, those are not true threats. They're protected speech. So were this court to find that they make out a claim for outrageous conduct under Colorado law, it would then necessarily. Then we'd go into the First Amendment. It would have to. Threat analysis, correct. But what I was getting at in Han Lee is that the court made clear that what Colorado has done is that it doesn't apply its tort law in an unconstitutional way. So when Gordon V. Boyles had two claims for defamation, both of, one of which was found to be true, and the court says in Han Lee, because it was found to be true, it therefore could not serve as the basis for an outrageous conduct claim, because true speech is protected. It also said the false speech. We have kind of an interesting thing. First, we have an opinion, of course, so that can't be a false or not false. We have an opinion. I don't want, you know, you have really bad music, okay? Right. It kind of takes out the first part. The real focus, of course, is the being slaughtered by a mob and suffering horrible death. So if I understand your analysis, we look at that, including the whole email, under Colorado law. And if we somehow think that there's either factual issues or the potential that there are, and take a look afresh and see whether this is a kind of alleged threat that would survive First Amendment scrutiny. That's the holding of Snyder v. Phelps, yes. Okay. Not a public figure plaintiff, a tort of intentional affliction of emotional distress, any speech on a matter of public concern not constituting a recognized category of unprotected speech cannot serve as the basis for a tort liability. That's Snyder v. Phelps. Can I take you to the, since you don't have rebuttal time, can I take you to the mandatory fee shifting, just to ask you a question on that? Unlike Colorado, Arizona does not have mandatory fee shifting. And I think what they're asking is why, that we should interpret this fact as indicating that Arizona public policy disfavors laws such as Colorado's. What's your response to that? My response is that the district court properly applied Arizona's choice of law analysis. And Arizona's choice of law analysis looks to the state with the most significant relationship to determine matters of not only the substance of the claim here, we're arguing Colorado intentional tort, Colorado statute was pleaded by the plaintiffs below, but also for attorney's fees. The fact that Arizona doesn't have such a statute, does that fold itself into a choice of law analysis? Does it impact the choice of law analysis? Well, it's considered as part of the analysis by Arizona's courts of law, and the district court properly applied Arizona's choice of law. If this case were in Arizona state court, it too would have applied Colorado's substantive law, because the attorney's fees provision is part of Colorado's tort law. It is its substantive law, including its cap on non-economic damages. This is essentially anti-SLAPP, right, motion to dismiss? Well, it's the closest thing. We don't have an anti-SLAPP statute. But that's sort of the equivalent of that. Thank you. It's only concerning meritless claims dismissed for failure to state a claim, such as this one. If I could jump back one step there. What the court in Hanyee Lee did was say Colorado's tort law does not create a cognizable claim based upon a single instance of protected speech, or multiple. Gordon v. Boyle was multiple publications. But even false publications at Gordon v. Boyle's, if you look at Hanyee Lee, those made with good faith basis for their belief could not serve as a rise for an outrageous conduct case. And the restatement third of torts, Section 46, says states incorporate those First Amendment limitations into their common law torts. And that's what Colorado has done. It could not create a cause of action for constitutionally protected speech. Thank you. Ms. Ruth, you have some time. Thank you, Your Honors. In terms of the issue of the single email, and I'll quote from the Colorado jury instructions that are given. It says, a single incident may constitute outrageous conduct if the incident would be so regarded by a reasonable member of the community. And it also goes on to state, in terms of the sources and authorities for those jury instructions, it says a single incident will give rise to outrageous conduct. I think he conceded that. He said a single incident can. He said this just isn't that single incident. So on the law, I think we all agree that the law says a single incident can, but it's got to be. Okay. And this goes on to say, if the incident involves far more than an isolated unkindness or insult and consists of conduct that meets the definition of outrage as expressed in the instruction. And, of course, he makes the distinction that there's no conduct at issue, only speech. What is your response to that? I would say, because this is, when they're talking about conduct, they're actually talking about the totality of the conduct, which includes the email and all the surrounding circumstances. And that is something that I think has been briefed. So, anyway, that is the totality of the conduct can go further than just a single incident. In terms of the, let's see, reasonable. Well, you argue in your briefing that the district court should have considered this substantial, quote-unquote, policy of Arizona before applying the Colorado fee-shifting statute. What policy were you referring to? You don't tell me what you're referring to. You just say a substantial policy. You can't just say that and expect me not to ask you. Yeah, I understand, Your Honor. I would say that I can't respond, but I can send you a response to that. I might want to address the attorney's fees, because even if your client were to lose on the substantive, it's unfortunately at the receiving end of a big attorney fee award. Do you want to address the attorney's fees issue? Yes, please, I do. I would just say that as far as the attorney's fees, applying the Colorado mandatory statute, it applies when Colorado is the forum state for diversity purposes. And it's been briefed, and it says that the availability of attorney's fees is governed by the law of the forum state. And there's many, many cases cited, the Carnes case, and that whole progeny of cases surrounding that. All right, thank you. Do you have any further questions at all? Appears not. Thank you. Thank you. Thank both counsel for your arguments this morning. Gallivan v. Holtein is submitted. Thank you.
judges: McKeown, Callahan, Quist